# UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF TEXAS

| | |
|---|---|
| Dr. Michael Moates<br><br>Plaintiff<br><br>v.<br><br>STATE OF NORTH CAROLINA,<br><br>STATE OF TEXAS,<br><br>STATE OF VIRGINIA, AND<br><br>STATE OF NEVADA<br><br>Defendants | Case No.: 4-23CV-772-0<br><br>**JURY TRIAL DEMANDED**<br><br> |

# MOTION FOR PRELIMINARY NATIONWIDE INJUNCTION

Pursuant to Rule 65 of the Federal Rules of Civil Procedure, Plaintiff Michael Moates, EdD, Pro Se, hereby moves this court for a Preliminary Injunction against the Defendants States of North Carolina, Texas, Virginia, and Nevada (collectively states) and in support thereof, states as follows:

## INTRODUCTION

The Plaintiff is challenging the mandatory certification requirement imposed by the states as an unconstitutional violation of the First Amendment rights of behavior analysts to freedom of speech and association.

## ARGUMENT

### I. Likelihood of Success on the Merits

Plaintiff contends that the mandatory BACB certification requirement violates the First Amendment, which safeguards an individual's right to associate and not to associate as an aspect of "freedom of speech." The requirement compels behavior analysts to join and financially support the BACB in violation of their freedom of association and speech, regardless of whether they agree with or wish to support its views, goals, or methods.

Additionally, Plaintiff alleges the certification requirement violates the Sherman Antitrust Act, which prohibits activities that restrict competition and monopolize trade. The

BACB's monopoly over certification for behavior analysts restricts competition, controls prices, and suppresses innovation in the field.

## II. Threat of Irreparable Harm

The Plaintiff faces immediate and irreparable harm without preliminary injunctive relief. The BACB's certification requirement currently limits the Plaintiff's and similarly situated behavior analysts' right to practice their profession. This requirement results in a loss of livelihood, professional reputation, and potentially, clientele - harm that cannot be compensated by damages alone.

An essential aspect of obtaining a preliminary injunction is demonstrating that there would be irreparable harm without it. In this case, the harm is not only to the plaintiff and other behavior analysts but also to the consumers of their services.

The enforcement of the new law requiring BACB certification in North Carolina would result in the immediate cessation of services for hundreds, potentially thousands, of clients. This sudden stop in services would significantly impact clients, including those exhibiting high-risk behaviors such as self-injurious behaviors, sexual behaviors, aggression towards others, and more.

These individuals, often among the most vulnerable in our society, rely on the continuity of therapeutic services provided by behavior analysts for their well-being and progress.

The immediate discontinuation of these services poses a serious risk to their safety and health and impedes their ability to live fulfilling and productive lives.

The harm to these consumers is not merely economic but includes the deterioration of their mental health, loss of progress, and potential escalation of harmful behaviors. Courts have recognized that such harms qualify as irreparable injury warranting preliminary injunctive relief because of their irreversible nature. See, e.g., Rodriguez v. DeBuono, 175 F.3d 227, 234–35 (2d Cir.1999) (finding irreparable harm in the context of mental health services).

Further, this immediate cessation of services undermines the fundamental purpose of state regulation – to protect consumers. The Supreme Court of North Carolina, in North Carolina State Board of Dental Examiners v. FTC, highlighted the necessity of state regulation to be driven by public welfare and not by a protectionist agenda for select market participants.

Therefore, enforcing the law mandating BACB certification in North Carolina violates constitutional and antitrust laws. It brings immediate and severe harm to consumers, the people the regulations aim to protect. For these reasons, the court must grant the preliminary injunction to prevent the grave and irreparable harm that would otherwise result from the enforcement of this new law.

### *III. Balance of Harms*

The harm Plaintiff will suffer without the injunction significantly outweighs any potential harm to Defendants. The BACB will continue to operate and may certify willing behavior analysts. In contrast, without an injunction, the Plaintiff and others will be prevented from practicing their profession, and current patients will find an immediate cessation of services.

### *IV. Public Interest*

The granting of a preliminary injunction serves the public interest. It would ensure respect for constitutional rights, uphold antitrust laws, encourage competition in the professional sector, and protect the public from potential monopolistic practices that could increase costs or limit access to services.

### **CONCLUSION**

Wherefore, Plaintiff, Dr. Michael Moates, respectfully requests that the Court grant this Motion for Preliminary Injunction, enjoin the enforcement of the BACB certification requirement, and issue a declaratory statement that the mandatory certification requirement by the BACB is unconstitutional and violates the First Amendment rights of behavior analysts. We ask that this injunction be a nationwide injunction that blocks the enforcement of a BACB certification requirement to be licensed, regardless of if a

statutory requirement or an administrative rule. In the alternative, we request a preliminary injunction to block the enforcement of any law requiring BACB certification.

Respectfully submitted,

/s/ **Michael Moates, EdD, Pro Se**

4501 Nautilus Circle #710

Fort Worth, Texas

254-966-2837

mike@cpmht.com

# UNITED STATES DISTRICT COURT

# NORTHERN DISTRICT OF TEXAS

| | |
|---|---|
| Dr. Michael Moates<br><br>Plaintiff<br><br>v.<br><br>STATE OF NORTH CAROLINA,<br><br>STATE OF TEXAS,<br><br>STATE OF VIRGINIA, AND<br><br>STATE OF NEVADA<br><br>Defendants | Case No.: _____<br><br><br>**JURY TRIAL DEMANDED** |

# PLAINTIFF'S MEMORANDUM OF LAW IN SUPPORT OF MOTION FOR PRELIMINARY INJUNCTION

6

## INTRODUCTION

This Memorandum of Law is submitted to support Plaintiff Dr. Michael Moates's, Motion for a Preliminary Injunction against the STATES OF NORTH CAROLINA, TEXAS, VIRGINIA, AND NEVADA. This case presents constitutional challenges under the First Amendment, the Sherman Antitrust Act, and various state laws, supported by court precedents.

## ARGUMENT

### *I. First Amendment Rights*

As interpreted by the U.S. Supreme Court in NAACP v. Alabama, 357 U.S. 449 (1958), the First Amendment safeguards an individual's right to associate and not to associate as an aspect of "freedom of speech." By compelling behavior analysts to join the BACB, the Defendants infringe on their freedom of speech and association.

### *II. Sherman Antitrust Act*

The Sherman Antitrust Act, 15 U.S.C. §§ 1-7, outlaws all contracts, combinations, and conspiracies that unreasonably restrain interstate and foreign trade. The monopoly granted to BACB by the Defendant States creates an unlawful restraint of trade, violating the Act.

### *III. State Laws*

North Carolina - In North Carolina State Board of Dental Examiners v. FTC, 574 U.S. 494 (2015), the Supreme Court held that state licensing boards, comprised of active market participants, do not enjoy state action immunity from antitrust laws unless supervised by the

states. The grant of monopoly to BACB, a private entity, by North Carolina is similar to the monopolistic practices struck down in this case.

Texas - The Texas Free Enterprise and Antitrust Act of 1983 (Tex. Bus. & Com. Code Ann. §15.05) prohibits monopolies and actions that restrain trade. It parallels federal antitrust laws and is construed harmoniously with federal judicial interpretations. The enforcement of BACB certification by Texas similarly conflicts with this Act.

Nevada - Under Nevada Rev. Stat. Ann. §598A.060, every contract that restrains trade or commerce is declared unlawful. The BACB's certification requirement enforced by Nevada unreasonably restrains trade and commerce in behavior analysis.

Virginia - Virginia Code § 59.1-9.5 clearly outlines that it is against public policy for any contract to restrain trade or commerce. At its core, the enforcement of BACB certification by Virginia restricts trade.

### *IV. Case Law*

Supporting this challenge are precedents, notably Abood v. Detroit Bd. of Educ., 431 U.S. 209 (1977), overruled on other grounds by Janus v. AFSCME, 138 S.Ct. 2448 (2018), which held compulsory fees to a public-sector union were permissible under the First Amendment when used for collective bargaining, contract administration, and grievance adjustment purposes but not for political or ideological activities not germane to its duties as collective-bargaining representatives.

Janus extended this principle, holding that public-sector unions may not collect agency fees from nonconsenting employees. The enforcement of the mandatory certification requirement by BACB similarly compels individuals to subsidize a third-party organization's activities, which could extend beyond the purview of professional certification, including potentially ideological and political activities.

### *V. Virginia's Sudden and Unilateral Change in Legislation Further Exemplifies Need for Injunction*

Further exacerbating the case for the immediate necessity of injunctive relief is the state of Virginia's recent unilateral change in its legislation. Before January 2023, Virginia, like other states, allowed individuals certified by recognized certification entities to become licensed behavior analysts. This approach, embracing a variety of certification bodies, promoted healthy competition, ensured the broad provision of services, and respected the constitutional rights of behavior analysts.

However, without adequate notice or justification, Virginia amended its legislation in January 2023 to restrict certification recognition exclusively to the Behavior Analyst Certification Board (BACB). This sudden change in law impinges upon the rights of behavior analysts operating within Virginia and creates a crisis for patients dependent on their services.

States must provide due process before depriving any person of life, liberty, or property, as per the Fourteenth Amendment. The abrupt change in Virginia's law without providing adequate notice to affected behavior analysts violates their rights to due process. Moreover, the unexpectedness of the change can disrupt the continuity of services, causing significant harm to the clients these analysts serve.

The Supreme Court, in Mullane v. Central Hanover Bank & Trust Co., has recognized that an essential principle of due process is the right to be heard "at a meaningful time and in a meaningful manner." Virginia's sudden and unilateral change in legislation, without providing a reasonable opportunity for stakeholders to respond, contradicts this fundamental principle of due process.

This situation further underscores the urgent need for a preliminary injunction. Immediate judicial intervention is necessary to prevent the potential harm to behavior analysts and their clients resulting from the unexpected enforcement of this restrictive and constitutionally questionable change in legislation. This court must safeguard behavior analysts' rights and clients' rights in the face of such arbitrary legislative changes.

### *VI. The Case of North Carolina: Unpredictability and Inconsistency in Certification Regulations*

The state of North Carolina presents an urgent need for judicial intervention in a case of inconsistent legislation and regulatory unpredictability. Initially, North Carolina's licensure act

was written with an exclusive Behavior Analyst Certification Board (BACB) certification requirement. This act did not come into effect immediately, only becoming operative once the first license was issued.

However, during the interim period before the licensure act took effect, the Appropriations Bill permitted unlicensed practice for individuals certified by either the BACB or the Qualified Applied Behavior Analysis Credentialing Board (QABA). This temporarily acknowledged QABA as a valid certification entity, allowing behavior analysts certified by QABA to continue providing vital services to their clients.

As the licensure act comes into effect, the allowance for QABA certification is slated to disappear, leaving many QABA-certified behavior analysts suddenly unable to practice in the state. This results in immediate disruption of services to numerous clients, contradicting the previous temporary recognition of QABA during the interim period.

Senator Perry has introduced Senate Bill 454, proposing reintroducing QABA as a recognized certification entity.

The abrupt and unexplained transition from the temporary recognition of QABA to the exclusive enforcement of BACB certification is alarming. It creates an unpredictable and challenging environment for behavior analysts in North Carolina and disrupts providing crucial services to clients.

The court's immediate intervention is, therefore, crucial. A preliminary injunction is necessary to halt the enforcement of the current restrictive regulations, preventing immediate harm to behavior analysts and their clients and allowing time for comprehensive judicial review. The court's intervention is critical to uphold due process and ensure the stability, fairness, and predictability of professional certification in the field of behavior analysis in North Carolina.

## CONCLUSION

For the reasons set forth above, Plaintiff respectfully requests that the Court grant a preliminary injunction restraining the Defendants from enforcing the BACB certification requirement.

Respectfully submitted,

**/s/ Michael Moates, EdD, Pro Se**

4501 Nautilus Circle #710

Fort Worth, Texas

254-966-2837

mike@cpmht.com